We also have cases for this afternoon, I'll tell the audience, and that is Shanne v. Addis. I'll show you our chocolate yarns. Okay, Mr. Ewing. We have a motion to approve the request of permission to reserve payments for a public hearing. This case involves a simple clinical defamation. The summary of the motion granted by the district court was granted on the only issue raised in that motion, the alleged application of a prison and judicial privilege for defending statements. Is this an issue that we ought to refer to the Pennsylvania Supreme Court, since they have ruled on statements as part of judicial proceeding, but never, as far as I can see, whether it occurred quite as early in the process as this one? I would pray, Your Honor, that it is not a case that has not been decided on this exact fact by the Pennsylvania Supreme Court. Is it important enough to send that through? We're very careful what we try to certify to the other court. The reason it may not be important enough is it's an unusual time pattern. I think clearly the defense was raised in the affirmative defense as filed by the defendant, but as Your Honor is aware, I can go through Chapter 1 of her deposition, but I'm going to add my briefs. She admitted she had no intent to make a report. She admitted that she went to the teacher as a friend, and she admitted that she didn't even know what this teacher planned on doing. She didn't listen to the report. Even the teacher commented in her deposition. She didn't even think of it. The purpose of privilege is to encourage people who can have money, and that is of a serious nature, of course, to encourage people like that to disclose the problem and to go to officials who might help them redress the problem. Isn't that what happened here? She go to an official of the school? No, she specifically said, I did not go to Mrs. O'Bannon as a teacher of the school. I went to her as a friend. She did. All right. That's true. But she did go to an official of the school. Well, I don't know that Mrs. O'Bannon would qualify as an official of the school. It's the same conversation. As a school teacher, you don't think she's an official of the school? I think the focus should not be on the fact that she may or may not have been an official. The focus has to be on whether or not the defendant is making a complaint. One clearly seen in the record for the fact that she did not view Mrs. O'Bannon as such an official was at 96A in our reproduced record. In page 22 of Mrs. O'Bannon's deposition where she asks her, should I go and make a report to the district? Clearly, if she's speaking to someone and asking should I go and make a report, she's not making a report to the district. Was a teacher, is a teacher required as part of their duties to report this type of activity to the school? Mrs. O'Bannon certainly testified she believed the following day that she had to do that. Is there something in writing that says that we expect all teachers to come forward with any complaint? I can't say that for you, but it would not surprise me or your honor that it would be something like that. Although if it did exist and Mrs. O'Bannon was not aware of it and didn't mention it, she felt just that sort of duty as a teacher certified in the Commonwealth of Pennsylvania that she had to bring this out. I will point out that the salutation was I think five or six years old at the time it was made to Mrs. O'Bannon and the defendant had made it to numerous other individuals before telling Mrs. O'Bannon. But never to an individual who had an obligation to pass it along. Agreed. Mrs. O'Bannon herself was not certain she was going to do that at the time. Even she was not certain what Mrs. Addis's intent was and she did not mention the duty of having to report it. That was at 199A, pages 137 and 138 of her deposition. In fact, the defendant testified she was surprised to learn that it had been reported. To get back to Judge Pompei's point about the policy, and Judge Berger alluded to this in her opinion, the policy not relying on encouraging people to come forward and make complaints of this nature, that policy is not furthered where the defendant has made an admission that she was not making such a report. A good example of that would be we all are familiar with the policies underlying attorney-client privilege. I have clients and I have clients who are not clients. If I have a client come to me and say, take the money laundering example we heard in the earlier case. I've done some money laundering. What should I do? I may or may not give him some idea. You need to go see a criminal lawyer. I'm sure I'm not a criminal lawyer. Is it King and Bell Berger? I'm not concerned about being anywhere near a criminal case. So even if you decide to go see another attorney and you're in the case, the one who came to me, what he told me was not privileged because he didn't consult me as an attorney. He consulted me as a friend. I think the privilege would be in trouble at that point. I may wind up having to testify about what he told me. Can it be said that she was actually torn between whether she should go to a friend or go to a school teacher? What did she say in your question? That was the case. It was her job to testify to that. She holds the privilege. It did seem like when things got started she was very aggressive about it. She cooperated 100%. She didn't show any reluctance at that point. So I wonder if that was not in her mind when she went to see O'Bannon. The only evidence I can cite to record that was in her mind was her answers to my questions at the deposition. Those answers made it clear to me she had no intent to report this to Ms. O'Bannon and that it was only Ms. O'Bannon's decision to take it to the next level, that Berger was going to be fined. I note that Shane didn't really make any objection or any comment as this matter proceeded forward. He never apparently said, that's not true. That didn't happen that way. I would take issue with that respectfully, Your Honor. He was represented by union counsel during the district proceeding and had not retained personal counsel as soon as he obtained our filing and did in fact send a letter to the school district prior to his filing requesting a chance to tell, quote, I believe it was his side of the story. He was given, I believe, some advice by the union. Was that ever accepted? That was never accepted, was it? That was not accepted. That was an issue that actually Martha Yoder, the district, I believe she was the head of HR at the time, testified she had received a letter. HR for the school or HR for the school district? For the school district. She had given a letter to district counsel and that was as far as we could go. It said what? The letter from our firm said that he wanted a chance to tell the side of the story. How would that have been? That would have been if this did not happen while she was a student. He absolutely has denied that. He denied it in his deposition extensively. I wonder if making a decision in your favor would discourage students like this from coming forward seven years later and complaining about inappropriate conduct while they were students in school. It should not do that because if they made a complaint and testified that they made a complaint, the approach would apply. But when they testified they did not make a complaint, they were talking only to a friend. I don't know if anyone in this case has. There is no basis for applying the privilege and the policy concerns that you're addressing simply would not apply. So if she had said in deposition, I'm going to wait to see that because I'm really torn between whether I should make a formal complaint or not and I thought she would give me good advice, then she would have the privilege. I believe that that would be a much more difficult question. I don't know for sure she would have the privilege. But that is not the fact. If it's true, then she said I went to her as a friend. Our argument would be much stronger had that occurred. But I don't believe that's what happened. And it's clear on the record that she knew her only as a friend. She could have told this to 20 friends at the same time. What precisely was the defamatory comment that she made? That she had a sexual relationship or romantic relationship with Mr. Shady while he was a teacher and she was a student. I'm paraphrasing, but that's essentially it. Not even after the time that she had graduated. What do you want this court to do? I believe the court should reverse Judge Brody's ruling and I believe there is sufficient evidence in this case for the court to enter a ruling that the privilege does not apply. It is a question of law for the court to decide. Based on the omissions of the defendant, the court simply should not apply in this case. This is the only basis on which the sum of judgment was filed. He just wants to go back on his complaint and prove that the statement that Addis made to Bannon was not true. Correct. That's just defamatory. That's correct. The scum has completed all the depositions he'd done and would be ready to go to trial if this was reversed. And does he have a right to get his job back? He does not at this point. He does not at this point. He did not appear when he was supposed to appear in the hearing. He was terminated right after that. Well, that's not entirely accurate. It is partially accurate. The union had to move one of the hearings, I believe. I did not represent him in the union proceeding. The union had counsel. I attended some of the hearings but was not permitted to speak by the arbitrator. He did, in fact, want to tell his side of the story before the board voted. And once he retained us, we wrote a letter to that effect. We disagreed with what the union had done. But there was a reason for his termination. The only reason for his termination is the fact that this student came forward and made this claim. The reason for his termination was that they believed this student. And not me. That's correct. But that doesn't mean that what she said was, in fact, the truth. But they were a judge of the fact before them in coming to their decision. He never came forward, though, and said what she is saying is simply not true. It didn't happen. She's making it out of her claw. He attempted to when the union represented him and was advised not to. When we got involved, we sent a letter. In essence, it left her complaint standing unchallenged. Well, that complaint was challenged before the board voted. There was a letter written that the director of HR acknowledged. But they didn't want him to tell his side of the story. I guess that's not the issue in this case. That's not the issue with Peter, but I was just wondering. Well, there's no question that this comment by her and Ms. LeBannon is what triggered the entire process that led to this firing. Hence the defamation action. There's no question, though, that they did have an affair. The only real issue is when. No question. But he claims it was brought after her graduation. She claims it was while she was a student. And if it was while she was a student, it would have violated the school district or the school's policy. That's correct. We have a few seconds left. I don't know if you want to do the rest of the work. But really, we're challenged with the fact that we disagree. The handling of the appellee's contention that this appeal has no merit. There was a motion filed, but it was not filed for a proper purpose, so that had no merit. We believe the question does have merit. As Judge Roth knows, this may be something you need to certify to the Supreme Court. But by no means is this a meritorious appeal. We believe strongly that these issues have not been decided before. I will listen to the questions. I'll stop. Thank you. Thank you. Mr. Britt. Madam Prosecutor, Steve Britt, B-R-I-T-T, for the appellee. Ms. Jena asks if I can reserve three minutes. No. Okay. No. The appellee doesn't deserve time. Thank you. Your Honor, just to clarify the fact that we came up here. What happened, the factual basis is that this man, Mr. Shaney, was summoned in by the Human Relations Director, Miller, for a hearing on December 16th. This was a lateral hearing. He was asked directly whether he had an affair with this young lady, and he refused to respond to that. So he was terminated, and he was invited to come back with counsel on January 18th, 2011. He did not appear. The lawyer called and said they weren't coming. So his termination, as I understand it, was based both on the statements by Ms. Addis and the fact that he refused to cooperate with their investigation. I'm sorry. The termination is not relevant to the issue of privilege. It is not, sir. Absolutely not, Judge. That's not the issue before you. Absolutely not the issue before you. If you adopt Mr. Pila's position with regard to immunity, what he's saying is that in every case where the plaintiff can inject intent into the case, the absolute immunity disappears, and you'll have 18 months of litigation terminating what the person said and why he said it. Sorry, I didn't follow that. Certainly, Judge. Can you rephrase that? It is clear that Pennsylvania's intent has no bearing on absolute immunity for, but against, for witnesses. That's the law. And Pennsylvania does that because if intent was part of the case... And then intent on the part of Addis. Yes, sir. If that were part of the case, then absolute immunity, which is immunity from litigation, not immunity from judgment, immunity from litigation, would simply disappear. The plaintiff would say, well, there is no immunity because we have an intent issue here. This young lady went to a woman who she knew to be a schoolteacher in the Illinois School District. But she's an adult. She graduated from college. She's, I think, 24, 25 years old. I mean, she's still a baby in her woods. So when she is deposed and she says, I did not go to O'Bannon as an agent of the school. I went to her as a friend. She is basically saying, I didn't go to her to make a complaint that would result in a disciplinary proceeding. I just went to her as a friend. And then she testified that she was surprised to learn that O'Bannon had, in fact, spoken to school officials. So in that context, I don't think the intent has anything to do with this case. I think what has to do with this case is, did she contemplate when she went to O'Bannon the filing of a complaint with school officials? Well, I'm just not sure that that would make a difference. I mean, it makes a difference in my mind. But what she contemplated when she went to see O'Bannon. I mean, isn't that what the privilege is for? If we get into a situation where the privilege obtains only if you speak to a stranger, then... Wait a minute. I don't think anybody suggested that. If she went to O'Bannon and said, you know what, I'm tone in this case. I had an affair with a school teacher. I don't know what to do. I'm thinking about going to officials. You're my friend. Would you give me some advice? I think privilege is indeed implicated. But that's not what she did. She later suggested... It does make a difference what she said her intentions were when she went to see O'Bannon. That's correct, Judge. To that extent, that's correct. Help me understand why that's wrong. This is a young lady, 24, 25 years old. She's had a very sensitive, embarrassing situation here. My mom wasn't there. Are you meaning for Addis? Miss Addis, yes, ma'am. She's had an affair with a teacher to whom she had an attachment to this man after she graduated. Many years afterwards. I can't get over the fact that this is all in the past. Well, that's correct, Your Honor. But, you know, I'm not sure. I can't put myself in the place of a 25-year-old. The way I'd like to. Ah, she would have... She certainly could have called the school and asked to speak to an anonymous teacher and disclosed this very sensitive information to the school. She could have done that. That's enough. She could have done that. But what she didn't do was... I'm conflicted by this. And she testified she was very conflicted about this. At one point, she said she didn't want anything to happen to her. But at another point, she says, and Judge Bernie points this out, she explained that she did not want this to happen to other children. Yeah, but she... Hold on a second. She said that afterwards. She said that after she had spoken to O'Bannon, and the issue here is whether the comments that she made to O'Bannon at the time she made those comments to O'Bannon are privileged or not. Not the comments that she made later to the officials that were investigating the case. No, I agree with that, Judge. I mean, I think that the... I think that the... might have linked them together, but I think that we have to look at them in isolation. Just the difficulty with this problem is that, again, if the absolute immunity is always to be challenged by her intent, remember that Pennsylvania says that the court should assume that her intent was both malicious and false. That kind of intent insulates any kind of intent that's below that. She's confused. She's upset. She wants this to be gone when she knows she's a teacher. The fact that she's also a friend, we're superimposing this on the fact that she's going to a school teacher. So the issue becomes, what's her relationship to the teacher that she's talking to? Nobody would argue that if she didn't know Mr. O'Bannon, other than as a teacher, there would be any issue. She simply says, I went to her as a friend. If only she was a teacher and she knew that. The consequences of the way he was surrounded, I understand, is precisely what she should do. But she did, I think, what they're required to do now, is go to other superiors with this. Whether that was a policy or not, I don't know. So that's my argument on it. In order to preserve absolute immunity for all witnesses in Pennsylvania, you cannot look at the intent. Well, but doesn't the Pennsylvania Supreme Court talk about what's in the contemplation of the person who was making the statement? I don't know if they do, Judge. I don't think that's relevant. You don't think it's relevant? No, sir. I think if you go to a school official... What if we were to say her intent was not to file a complaint? I don't know if that makes any difference. She's going to a school official and the thing follows the way it follows. Because what we're doing here is when we argue about intent, we're arguing about litigation. That destroys immunity. There's a policy in Pennsylvania to avoid meeting new people so they don't get sued. And so we don't have to have what happened in this case months and months of litigation. That's no immunity whatsoever. So I think that that's the point. And it would be an honor, and certainly if the court thought it was appropriate, to issue a recommendation from the Supreme Court, the Superior Court. Certify the issue? Certify the issue. That would be perfectly appropriate. It's a very, very specific state question. But the way the case law says, that any question with regard to relevancy, permanency is decided in favor of immunity. Because if we find holes that broker immunity, people will be less inclined to come forward knowing that they're going to get sued on an intention issue. That's my argument. Thank you. Thank you. Your Honor, I'll start by answering a question. Mr. Franklin, the general consulting Supreme Court Judge Montes has said contemplative proceedings, and has said that in the group's case, which both parties have said, that's at 507-825-356, the communication has to be pertinent to contemplative proceedings, and there have to be contemplative proceedings. Contemplated by whom? By the client. The issue here with my opponent's argument, he's saying that I'm proposing that we should remove immunity from everyone because you're not allowed to look at the intent that a person has in making a complaint. And the difficulty with that argument is the way he's using the word intent. He's talking about motive. He's talking about the motive for making a complaint. You're talking about O'Bannon or Addis? Addis, your client. She has to have the intent to make a complaint. Didn't she say that she didn't? She did say she didn't, and that's exactly the problem. My opponent has not adequately answered that fatal flaw in his argument. That despite the fact that she raised a defense, that I specifically asked her about her deposition, I'm paraphrasing. I said, you've raised a defense of an indigenous case. Is it your intention that you're going to do not make a complaint? And she said, I do not intend to go to a school district. That's only one of many statements. Did she explain what her intent was? I don't believe she did. And it was her obligation at that time, as Judge Fontes has pointed out, she was nobody in the courts. If this is the comment that precipitated the whole legal proceedings, the whole disciplinary proceedings, isn't that covered by Pennsylvania law? It is not if she did not contemplate making that comment to initiate proceedings. And where a defendant has come in and admitted that was not their intent, it's the same as if I go out onto the street and yell up and down Market Street that someone has committed a money laundering, having that file in my name and address. If 50 people hear it, and one is a federal agent who then initiates proceedings, I have not had an intent to initiate those proceedings. But isn't that an obligation to come after you? Maybe it's the use of the word intent. I think that's exactly the problem, Judge Fontes. The problem is there's an intent to make a statement, and there's a motive in making it. Yeah, I think that's what the Pennsylvania Supreme Court doesn't talk about. Exactly. You said very clearly, I believe this was in the, I think it was in the Richmond case, that the intent in making a complaint is irrelevant, and the same number of cases were cited in our brief about someone complaining about a man with a gun to the police pursuing mental health proceedings, on statements in a burning case, all of those, at that trial, even the case of the attorney who accused the other attorney of extortion, all clearly within the realm of proceedings. Well, in that case, Mr. Brewer is right, isn't he? He's right if there are proceedings ongoing, and there's an intent to attach that statement to the proceedings. I found the statement of the Supreme Court on the issue of intangible contemplation of the proceedings. So, it says in the Pulse v. Manuel case, with respect to communications made prior to the institution of proceedings, the protected communication, we need to have impertinent material, we need to have an issue in the ring, of course, of preparing for contemplated proceedings. Correct. So, I think the question is, was her statement to a man preparing for contemplated proceedings? And her testimony is adequately appropriate, it was not, and that's an admission of the defendant. That's the problem with the bargain. Thank you. Thank you.